## BROOKS *v.* TENNESSEE

No. 71–5313.   Argued March 21–22, 1972—Decided June 7, 1972

BRENNAN, J., delivered the opinion of the Court, in which DOUGLAS, WHITE, MARSHALL, and POWELL, JJ., joined. STEWART, J., filed a statement concurring in the judgment and in Part II of the Court's opinion, *post*, p. 613. BURGER, C. J., filed a dissenting opinion, in which BLACKMUN and REHNQUIST, JJ., joined, *post*, p. 613. REHNQUIST, J., filed a dissenting opinion, in which BURGER, C. J., and BLACKMUN, J., joined, *post*, p. 617.

*Jerry H. Summers* argued the cause and filed a brief for petitioner.

*Robert E. Kendrick,* Deputy Attorney General of Tennessee, argued the cause and filed a brief for respondent.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

Petitioner was tried and convicted in the Circuit Court of Hamilton County, Tennessee, on charges of armed robbery and unlawful possession of a pistol. During the

trial, at the close of the State's case, defense counsel moved to delay petitioner's testimony until after other defense witnesses had testified. The trial court denied this motion on the basis of Tenn. Code Ann. § 40–2403 (1955), which requires that a criminal defendant "desiring to testify shall do so before any other testimony for the defense is heard by the court trying the case." [1] Although the prosecutor agreed to waive the statute, the trial court refused, stating that "the law is, as you know it to be, that if a defendant testifies he has to testify first." The defense called two witnesses, but petitioner himself did not take the stand.

Following the denial of his motion for new trial, petitioner appealed his conviction to the Tennessee Court of Criminal Appeals, which overruled his assignments of error, including his claim that § 40–2403 violated the State and Federal Constitutions. The Supreme Court of Tennessee denied review, and we granted certiorari to consider whether the requirement that a defendant testify first violates the Federal Constitution. 404 U. S. 955 (1971). We reverse.

---

[1] Section 40–2403 was first enacted in 1887 as part of a Tennessee statute that provided that criminal defendants were competent to testify on their own behalf. That statute appears in the Tennessee Code Annotated as follows:

"§ 40–2402. Competency of defendant. In the trial of all indictments, presentments, and other criminal proceedings, the party defendant thereto may, at his own request, but not otherwise, be a competent witness to testify therein.

"§ 40–2403. Failure of defendant to testify—Order of testimony. The failure of the party defendant to make such request and to testify in his own behalf, shall not create any presumption against him. But the defendant desiring to testify shall do so before any other testimony for the defense is heard by the court trying the case."

## I

The rule that a defendant must testify first is related to the ancient practice of sequestering prospective witnesses in order to prevent their being influenced by other testimony in the case.  See 6 J. Wigmore, Evidence § 1837 (3d ed. 1940).  Because the criminal defendant is entitled to be present during trial, and thus cannot be sequestered, the requirement that he precede other defense witnesses was developed by court decision and statute as an alternative means of minimizing this influence as to him.  According to Professor Wigmore, "[t]he reason for this rule is the occasional readiness of the interested person to adapt his testimony, when offered later, to victory rather than to veracity, so as to meet the necessities as laid open by prior witnesses . . . ."  *Id.,* at § 1869.

Despite this traditional justification, the validity of the requirement has been questioned in a number of jurisdictions as a limitation upon the defendant's freedom to decide whether to take the stand.  Two federal courts have rejected the contention, holding that a trial court does not abuse its discretion by requiring the defendant to testify first.  *United States* v. *Shipp,* 359 F. 2d 185, 189–190 (CA6 1966); *Spaulding* v. *United States,* 279 F. 2d 65, 66–67 (CA9 1960).  In *Shipp,* however, the dissenting judge strongly objected to the rule, stating:

> "If the man charged with crime takes the witness stand in his own behalf, any and every arrest and conviction, even for lesser felonies, can be brought before the jury by the prosecutor, and such evidence may have devastating and deadly effect, although unrelated to the offense charged.  The decision as to whether the defendant in a criminal case shall take

the stand is, therefore, often of utmost importance, and counsel must, in many cases, meticulously balance the advantages and disadvantages of the prisoner's becoming a witness in his own behalf. Why, then, should a court insist that the accused must testify before any other evidence is introduced in his behalf, or be completely foreclosed from testifying thereafter? . . . This savors of judicial whim, even though sanctioned by some authorities; and the cause of justice and a fair trial cannot be subjected to such a whimsicality of criminal procedure." 359 F. 2d, at 190–191.

Other courts have followed this line of reasoning in striking down the rule as an impermissible restriction on the defendant's freedom of choice. In the leading case of *Bell* v. *State,* 66 Miss. 192, 5 So. 389 (1889), the court held the requirement to be reversible error, saying:

"It must often be a very serious question with the accused and his counsel whether he shall be placed upon the stand as a witness, and subjected to the hazard of cross-examination, a question that he is not required to decide until, upon a proper survey of all the case as developed by the state, and met by witnesses on his own behalf, he may intelligently weigh the advantages and disadvantages of his situation, and, thus advised, determine how to act. Whether he shall testify or not; if so, at what stage in the progress of his defense, are equally submitted to the free and unrestricted choice of one accused of crime, and are in the very nature of things beyond the control or direction of the presiding judge. Control as to either is coercion, and coercion is denial of freedom of action." *Id.,* at 194, 5 So., at 389.

In *Nassif* v. *District of Columbia,* 201 A. 2d 519 (DC Ct. App. 1964), the court adopted the language and

reasoning of *Bell* in concluding that the trial court had erred in applying the rule.

Although *Bell, Nassif,* and the *Shipp* dissent were not based on constitutional grounds, we are persuaded that the rule embodied in § 40–2403 is an impermissible restriction on the defendant's right against self-incrimination, "to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." *Malloy* v. *Hogan,* 378 U. S. 1, 8 (1964). As these opinions demonstrate, a defendant's choice to take the stand carries with it serious risks of impeachment and cross-examination; it "may open the door to otherwise inadmissible evidence which is damaging to his case," *McGautha* v. *California,* 402 U. S. 183, 213 (1971), including, now, the use of some confessions for impeachment purposes that would be excluded from the State's case in chief because of constitutional defects. *Harris* v. *New York,* 401 U. S. 222 (1971). Although "it is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons in deciding whether to testify," *McGautha* v. *California, supra,* at 215, none would deny that the choice itself may pose serious dangers to the success of an accused's defense.

Although a defendant will usually have some idea of the strength of his evidence, he cannot be absolutely certain that his witnesses will testify as expected or that they will be effective on the stand. They may collapse under skillful and persistent cross-examination, and through no fault of their own they may fail to impress the jury as honest and reliable witnesses. In addition, a defendant is sometimes compelled to call a hostile prosecution witness as his own.[2] Unless the State pro-

---

[2] The instant case is an apt illustration. After the State had rested, defense counsel requested permission to call the local chief

vides for discovery depositions of prosecution witnesses, which Tennessee apparently does not,[3] the defendant is unlikely to know whether this testimony will prove entirely favorable.

Because of these uncertainties, a defendant may not know at the close of the State's case whether his own testimony will be necessary or even helpful to his cause. Rather than risk the dangers of taking the stand, he might prefer to remain silent at that point, putting off his testimony until its value can be realistically assessed. Yet, under the Tennessee rule, he cannot make that choice "in the unfettered exercise of his own will." Section 40–2403 exacts a price for his silence by keeping him off the stand entirely unless he chooses to testify first.[4] This, we think, casts a heavy burden on a defendant's otherwise unconditional right not to take the

---

of police as a hostile witness, and to cross-examine him about the circumstances surrounding petitioner's lineup. Because the police chief had not testified, though he was subpoenaed by the State, the trial court denied the motion, ruling that the chief will "be your witness if you call him."

[3] Tenn. Code Ann. § 40–2428 provides:

"The accused may, by order of the court, have the depositions of witnesses taken in the manner prescribed for taking depositions in civil cases, on notice to the district attorney."

However, a recent decision by the Tennessee Court of Criminal Appeals holds that this statute does not give the defendant in a criminal case the right to take a discovery deposition. *Craig* v. *State,* —— Tenn. App. ——, 455 S. W. 2d 190 (1970).

[4] The failure to testify first not only precludes any later testimony by defendant concerning new matters, but may also preclude testimony offered in rebuttal of State's witnesses. *Arnold* v. *State,* 139 Tenn. 674, 202 S. W. 935 (1918), holds that a defendant may testify in rebuttal if he has testified first on direct. According to the parties, there is no Tennessee case holding that a defendant who does not testify first may later take the stand in rebuttal.

stand.[5] The rule, in other words, "cuts down on the privilege [to remain silent] by making its assertion costly." *Griffin* v. *California*, 380 U. S. 609, 614 (1965).[6]

Although the Tennessee statute does reflect a state interest in preventing testimonial influence, we do not regard that interest as sufficient to override the defendant's right to remain silent at trial.[7] This is not to imply that there may be no risk of a defendant's coloring his testimony to conform to what has gone before. But our adversary system reposes judgment of the credibility of all witnesses in the jury. Pressuring the defendant to take the stand, by foreclosing later testimony if he refuses, is not a constitutionally permissible means of ensuring his honesty. It fails to take into account the

---

[5] That burden is not lightened by the fact that Tennessee courts also require the chief prosecuting witness to testify first for the State if he chooses to remain in the courtroom after other witnesses are sequestered. *Smartt* v. *State*, 112 Tenn. 539, 80 S. W. 586 (1904). Despite its apparent attempt at symmetry, this rule does not restrict the prosecution in the same way as the defense, for the State has a certain latitude in designating its prosecuting witness, choosing for example between the victim of the crime and the investigating officer. A more fundamental distinction, of course, is that the State, through its prosecuting witness, does not share the defendant's constitutional right not to take the stand. Thus, the choice to present the prosecuting witness first or not at all does not raise a constitutional claim secured to the State, as it does in the situation of the defendant.

[6] The dissenting opinions suggest that there can be no violation of the right against self-incrimination in this case because Brooks never took the stand. But the Tennessee rule imposed a penalty for petitioner's initial silence, and that penalty constitutes the infringement of the right.

[7] It is not altogether clear that the State itself regards the interest as more than minimally important. It has long been the rule in Tennessee that the statute may be waived, see *Martin* v. *State*, 157 Tenn. 383, 8 S. W. 2d 479 (1928), and an offer of waiver was made by the prosecutor in this case, though not accepted by the trial court.

very real and legitimate concerns that might motivate a defendant to exercise his right of silence. And it may compel even a wholly truthful defendant, who might otherwise decline to testify for legitimate reasons, to subject himself to impeachment and cross-examination at a time when the strength of his other evidence is not yet clear. For these reasons we hold that § 40–2403 violates an accused's constitutional right to remain silent insofar as it requires him to testify first for the defense or not at all.

## II

For closely related reasons we also regard the Tennessee rule as an infringement on the defendant's right of due process as defined in *Ferguson* v. *Georgia,* 365 U. S. 570 (1961). There the Court reviewed a Georgia statute providing that a criminal defendant, though not competent to testify under oath, could make an unsworn statement at trial. The statute did not permit defense counsel to aid the accused by eliciting his statement through questions. The Court held that this limitation deprived the accused of " 'the guiding hand of counsel at every step in the proceedings against him,' *Powell* v. *Alabama,* 287 U. S. 45, 69, within the requirement of due process in that regard as imposed upon the States by the Fourteenth Amendment." *Id.,* at 572. The same may be said of § 40–2403. Whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right. By requiring the accused and his lawyer to make that choice without an opportunity to evaluate the actual worth of their evidence, the statute restricts the defense—particularly counsel—in the planning of its case. Furthermore, the penalty for not testifying first is to keep the defendant off the stand entirely, even though as a matter of professional judgment his lawyer might want to call him later in the trial. The accused is thereby deprived of

the "guiding hand of counsel" in the timing of this critical element of his defense. While nothing we say here otherwise curtails in any way the ordinary power of a trial judge to set the order of proof, the accused and his counsel may not be restricted in deciding whether, and when in the course of presenting his defense, the accused should take the stand.

Petitioner, then, was deprived of his constitutional rights when the trial court excluded him from the stand for failing to testify first. The State makes no claim that this was harmless error, *Chapman* v. *California*, 386 U. S. 18 (1967), and petitioner is entitled to a new trial.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE STEWART joins Part II of the opinion, and concurs in the judgment of the Court.

MR. CHIEF JUSTICE BURGER, with whom MR. JUSTICE BLACKMUN and MR. JUSTICE REHNQUIST join, dissenting.

This case is an example of the Court's confusing what it does not approve with the demands of the Constitution. As a matter of choice and policy—if I were a legislator, for example—I would not vote for a statute like that the Court strikes down today. But I cannot accept the idea that the Constitution forbids the States to have such a statute.

Of course, it is more convenient for a lawyer to defer the decision to have the accused take the stand until he knows how his other witnesses fare. By the same token, it is helpful for an accused to be able to adjust his testimony to what his witnesses have had to say on the matter. No one has seriously challenged the absolute discretion of a trial judge to exclude witnesses, other than the accused, from the courtroom until they are called to the

stand. The obvious purpose is to get honest testimony and minimize the prospect that a witness will adjust and "tailor" his version to fit what others have said; it seems somewhat odd to say the Constitution forbids all States to require the accused to give his version before his other witnesses speak, since it is not possible to exclude him from the courtroom, as is the common rule for witnesses who are not parties.

The Court's holding under the Fifth Amendment is admittedly unsupported by any authority and cannot withstand analysis. The Constitution provides only that no person shall "be compelled in any criminal case to be a witness against himself." It is undisputed that petitioner was not in fact compelled to be a witness against himself, as he did not take the stand. Nor was the jury authorized or encouraged to draw perhaps unwarranted inferences from his silence, as in *Griffin* v. *California,* 380 U. S. 609 (1965). Petitioner was clearly not subjected to the obvious compulsion of being held in contempt for his silence, as in *Malloy* v. *Hogan,* 378 U. S. 1 (1964), nor did the Tennessee procedure subject him to any other significant compulsion to testify other than the compulsion faced by every defendant who chooses not to take the stand—the knowledge that in the absence of his testimony the force of the State's evidence may lead the jury to convict. Cases such as *Spevack* v. *Klein,* 385 U. S. 511 (1967), and *Gardner* v. *Broderick,* 392 U. S. 273 (1968), involving loss of employment or disbarment are therefore clearly inapposite. That should end the matter.

However, the Court distorts both the context and content of *Malloy* v. *Hogan, supra,* at 8, by intimating that the Fifth Amendment may be violated if the defendant is forced to make a difficult choice as to whether to take the stand at some point in time prior to the con-

clusion of a criminal trial. But, as the Court pointed out only last Term in *McGautha* v. *California,* 402 U. S. 183 (1971), "[a]lthough a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." *Id.,* at 213. Indeed, the "choice" we sustained in *McGautha* was far more difficult than that here, as the procedure there clearly exerted considerable force to compel the defendant to waive the privilege and take the stand in order to avoid the possible imposition of the death penalty. See also *Williams* v. *Florida,* 399 U. S. 78 (1970). There is no such pressure here. The majority's rationale would lead to the absurd result that the State could not even require the defendant to finally decide whether he wishes to take the stand prior to the time the jury retires for deliberations, for, even at that point, he "may not know . . . whether his own testimony will be necessary or even helpful to his cause." Even then, he might "prefer to remain silent . . . putting off his testimony until its value can be realistically assessed." In short, even at the close of the defense case, his decision to take the stand is not unfettered by the difficulty to make the hard choice to waive the privilege. Perhaps the defendant's decision will be easier at the close of all the evidence. Perhaps not. The only "burden" cast on the defendant's choice to take the stand by the Tennessee procedure is the burden to make the choice at a given point in time. That the choice might in some cases be easier if made later is hardly a matter of constitutional dimension.

The Court's holding that the Tennessee rule deprives the defendant of the "guiding hand of counsel" at every stage of the proceedings fares no better, as MR. JUSTICE REHNQUIST clearly demonstrates. It amounts to nothing more than the assertion that counsel may not be

restricted by ordinary rules of evidence and procedure in presenting an accused's defense if it might be more advantageous to present it in some other way. A rule forbidding defense counsel to ask leading questions of the defendant when he takes the stand may restrict defense counsel in his options and may in many cases bear only remote relationship to the goal of truthful testimony. Yet no one would seriously contend that such a universal rule of procedure is prohibited by the Constitution. The rule that the defendant waives the Fifth Amendment privilege as to any and all relevant matters when he decides to take the stand certainly inhibits the choices and options of counsel, yet this Court has never questioned such a rule and reaffirmed its validity only last Term. See *McGautha* v. *California,* 402 U. S., at 215. Countless other rules of evidence and procedure of every State may interfere with the "guiding hand of counsel." The Court does not explain why the rule here differs from those other rules.

Perhaps this reflects what is the true, if unspoken, basis for the Court's decision; that is, that in the majority's view the Tennessee rule is invalid because it is followed presently by only two States in our federal system. But differences in criminal procedures among our States do not provide an occasion for judicial condemnation by this Court.

This is not a case or an issue of great importance, except as it erodes the important policy of allowing diversity of method and procedure to the States to the end that they can experiment and innovate, and retreat if they find they have taken a wrong path. Long ago, Justice Brandeis spoke of the need to let "a single courageous State" try what others have not tried or will not try. *New State Ice Co.* v. *Liebmann,* 285 U. S. 262, 311 (1932) (dissenting opinion); see *Fay* v. *New York,* 332 U. S. 261,

296 (1947) (Jackson, J.). In the faltering condition of our machinery of justice this is a singularly inappropriate time to throttle the diversity so essential in the search for improvement.

MR. JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE and MR. JUSTICE BLACKMUN join, dissenting.

The Court's invalidation of the Tennessee statute challenged here is based upon both its stated repugnance to the privilege against self-incrimination and its infringement of counsel's right to plan the presentation of his case.

While it is possible that this statute regulating the order of proof in criminal trials might in another case raise issues bearing on the privilege against self-incrimination, its application in this case certainly has not done so. Petitioner Brooks never took the stand, and it is therefore difficult to see how his right to remain silent was in any way infringed by the State. Whatever may be the operation of the statute in other situations, petitioner cannot assert that it infringed *his* privilege against self-incrimination—a privilege which he retained inviolate throughout the trial.

The Court's alternative holding that the Tennessee statute infringes the right of petitioner's counsel to plan the presentation of his case creates a far more dominant role for defense counsel than that indicated by the language of the Constitution. While cases such as *Gideon* v. *Wainwright,* 372 U. S. 335 (1963), establish the fundamental nature of the constitutional right to the assistance of counsel, no case previously decided by this Court elevates defense counsel to the role of impresario with respect to decisions as to the order in which witnesses shall testify at the trial.

This Court and other courts have repeatedly held that the control of the order of proof at trial is a matter primarily entrusted to the discretion of the trial court. See, *e. g., Thiede* v. *Utah Territory,* 159 U. S. 510, 519 (1895); *Nelson* v. *United States,* 415 F. 2d 483, 487 (CA5 1969), cert. denied, 396 U. S. 1060 (1970); *Horowitz* v. *Bokron,* 337 Mass. 739, 151 N. E. 2d 480 (1958); *Small* v. *State,* 165 Neb. 381, 85 N. W. 2d 712 (1957). The notion that the Sixth Amendment allows defense counsel to overrule the trial judge as to the order in which witnesses shall be called stands on its head the traditional understanding of the defendant's right to counsel. Defense counsel sits at the side of the accused, not to take over the conduct of the trial, but to advise the accused as to various choices available to him within the limits of existing state practice and procedure.

I could understand, though I would not agree with, a holding that under these circumstances the Fourteenth Amendment conferred a right upon the defendant, counseled or not, to decide at what point during the presentation of his case to take the stand. But to cast the constitutional issue in terms of violation of the defendant's right to counsel suggests that defense counsel has an authority of constitutional dimension to determine the order of proof at trial. It is inconceivable to me that the Court would permit every preference of defense counsel as to the order in which defense witnesses were to be called to prevail over a contrary ruling of the trial judge in the exercise of his traditional discretion to control the order of proof at trial. The crucial fact here is not that *counsel* wishes to have a witness take the stand at a particular time, but that the *defendant*—whether advised by counsel or otherwise—wishes to determine at what point during the presentation of his case *he* desires to take the stand. Logically the benefit of today's ruling should be available to a defendant con-

ducting his own defense who has waived the right of counsel, but since the Court insists on putting the issue in terms of the advice of counsel, rather than in terms of defense control over the timing of defendant's appearance, the application of today's holding to that situation is by no means clear.

The Tennessee statute in question is, as the Court notes in its opinion, based upon an accommodation between the traditional policy of sequestering prospective witnesses before they testify and the right of the criminal defendant to be present during his trial. Since the defendant may not be sequestered against his will while other witnesses are testifying, the State has placed a more limited restriction on the presentation of his testimony. The defendant is required to testify, if he chooses to do so, as the first witness for the defense. The State applies the same rule evenhandedly to the prosecuting witness, if there be one; he, too, must testify first. While it is perfectly true that the prosecution is given no constitutional right to remain silent, this fact does not detract from the evident fairness of Tennessee's effort to accommodate the two conflicting policies.

The state rule responds to the fear that interested parties, if allowed to present their own testimony after other disinterested witnesses have testified, may well shape their version of events in a way inconsistent with their oath as witnesses. This fear is not groundless, nor is its importance denigrated by vague generalities such as the statement that "our adversary system reposes judgment of the credibility of all witnesses in the jury." *Ante,* at 611. Assuredly the traditional common-law charge to the jury confides to that body the determination as to the truth or falsity of the testimony of each witness. But the fact that the jury is instructed to make such a determination in reaching its verdict has never been thought to militate against

the desirability, to say nothing of the constitutionality, of additional inhibitions against perjury during the course of a trial. The traditional policy of sequestering nonparty witnesses, the requirement of an oath on the part of all witnesses, and the opportunity afforded for cross-examination of witnesses are but examples of such inhibitions. As a matter of constitutional judgment it may be said that the effectuation of this interest has been accomplished by Tennessee at too high a price, but the importance of the interest itself cannot rationally be dispelled by loose assertions about the role of the jury.

In view of the strong sanction in history and precedent for control of the order of proof by the trial court, I think that Tennessee's effort here to restrict the choice of the defendant as to when he shall testify, in the interest of minimizing the temptation to perjury, does not violate the Fourteenth Amendment. I would therefore affirm the judgment below.