STATE OF CONNECTICUT *v.* ANONYMOUS (1973-4)*

SUPERIOR COURT

MIGNONE, J. In this case the defendant has filed a motion to suppress out-of-court statements made by him subsequent to a plea bargaining agreement.

---

* Opinions on preliminary motions in criminal cases are thus entitled, in view of General Statutes § 54-90.

The file record shows that the defendant entered a plea of not guilty. Trial started under the not-guilty plea. Later, the not-guilty plea was withdrawn and a plea of nolo contendere was allowed to be entered on a substituted information as part of a plea bargaining agreement. Subsequently, the defendant gave two written statements to the state's attorney's office pursuant to the plea bargaining agreement. Thereafter, when the defendant was presented for sentencing, the judge then sitting refused to accept the recommendation made by the state's attorney in conformance with the plea bargaining agreement. The defendant, however, was permitted to withdraw his plea of nolo contendere and enter a plea of not guilty—the posture at which the case now stands.

The matter has been presented to this court on an agreed stipulation of facts. The issue as to the admissibility of the statements, at the trial, in the factual circumstances presented, appears to present a novel legal situation in Connecticut. No question of bad faith on the part of either side is involved. The defendant insists, however, that the two statements must be suppressed and must not be used either as part of the state's substantive case or for impeachment purposes. The state claims that the statements were given voluntarily and that their use should not be restrained or restricted.

The court has examined the authorities relied on in the briefs of counsel. The main case cited in the defendant's brief, *Alesi* v. *Craven,* 440 F.2d 975 (9th Cir.), is distinguishable on its factual situation. In that habeas corpus proceeding in a drug act violation case, the decision points out that the state trial judge called counsel for the state and the defendant, Alesi, into his chambers and made a recommendation as to a certain disposition, including dis-

missal of a prior felony charge pending against Alesi. As the opinion (p. 976) makes clear, "Alesi initially rejected the bargain, claiming that he was innocent, but after defense counsel exerted strong pressure upon him, Alesi relented and entered a guilty plea." The plea bargain was not consummated because the California narcotics rehabilitation center refused to accept Alesi as a patient on the ground that he was on parole. His plea of guilty was allowed to be withdrawn. At the second trial, before a different judge, no pretrial hearing was held as to the voluntary nature of certain statements Alesi had made to the probation officer after the original plea of guilty had been entered pursuant to the plea bargain Alesi grudgingly accepted. The prosecution sought to impeach Alesi's testimony by questioning him regarding the statements.

The Circuit Court of Appeals stated (p. 977): "Upon facts first brought out at the federal hearing, the district court had ample evidence from which to find that Alesi's statements had been coerced: Alesi's lawyer did not exercise a guiding hand; he had given his client a forceful shove. The pressure he exerted had been set in motion by the first trial judge. The trial judge's active entry into the plea bargaining was well intentioned, but when the move was made, the trial judge did not know the facts that ultimately doomed the pact. When that judge vacated the plea and tried to restore Alesi to the position he had occupied before the plea was taken, the judge recognized that the plea bargaining atmosphere had been coercive. The plea, the challenged statements, and the plea bargain are inextricably intertwined."

The *Alesi* decision is premised on the District Court's finding of involuntariness as to the statements given by Alesi, a finding which foreclosed their use either directly or by way of impeachment.

The recent United States Supreme Court decision in *Santobello* v. *New York,* 404 U.S. 257, discusses and puts its imprimatur upon the plea bargaining process, holding that, if fairly entered into, it is a necessary adjunct of the disposition of criminal cases. The instant case is not one where a plea bargain was entered into by coercion of any kind exercised upon the defendant, nor did the prosecutor fail to abide by his plea bargaining commitment. See id., 267 (concurring opinion); id., 268 (concurring and dissenting opinion). The issue raised herein clearly comes within the impact of *Harris* v. *New York,* 401 U.S. 222. No claim is made that, once the plea bargain here involved had been agreed upon and a plea of nolo contendere entered, the subsequent statements given by the defendant to the state's attorney were coerced or involuntary. *Harris* points out (p. 224): "It does not follow from . . . [*Miranda* v. *Arizona,* 384 U.S. 436] that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards." And *Harris* suggests (p. 225) this view of the issue presented herein: "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. See *United States* v. *Knox,* 396 U.S. 77 (1969); cf. *Dennis* v. *United States,* 384 U.S. 855 (1966). Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment. The shield

provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements."

The defendant's brief cites *Machibroda* v. *United States,* 368 U.S. 487, in support of his position. But that case involved claims of specific misrepresentations by the assistant United States attorney to the defendant personally—not in the presence of the defendant's counsel—and it deals with the entry of the plea of guilty itself, stating (p. 493): "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." That decision, however, also carefully points out (p. 493): " 'A plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction. . . .' "

In *Lynumn* v. *Illinois,* 372 U.S. 528, 534, also cited by the defendant, an oral confession was induced by the threats of three police officers that state financial aid for the accused's infant children would be cut off and the children taken from her if she did not "cooperate." Her oral statement was testified to by the officers as part of the state's case. The opinion (p. 534) states in no uncertain terms: "We think it clear that a confession made under such circumstances must be deemed not voluntary, but coerced." The facts in the instant matter are in no way similar. *Haynes* v. *Washington,* 373 U.S. 503, also cited by the defendant, is entirely inapplicable on its facts.

*Keller* v. *State,* 2 Md. App. 623, another case cited by the defendant, ruled out two statements as involuntary, holding that the earlier was clearly in-

voluntary and so tainted the second that the latter could not be considered separately. *Keller* makes this significant observation, however, as to the use of the second statement (p. 628): "Had this statement not been made against the compelling background which produced the first confession, we would find it admissible in evidence, as representing the quintessence of voluntariness."

This court must conclude that, under the facts stipulated, the state has upheld its part of the plea bargaining agreement. Owing, however, to the unforeseen refusal of the sentencing judge to accept the recommendation made pursuant to the plea bargain, the defendant was allowed to withdraw his plea of nolo contendere and enter a plea of not guilty.

What is required is a trial assuring fairness and due process to the defendant. The state should not now be allowed to use as part of its case in chief the two statements given as a result of the plea bargaining agreement. The defendant has the constitutional right not to take the stand in his own behalf. To permit the state to use the statements in proving its case in chief would effectively violate his basic constitutional right against self-incrimination, a right only recently reemphasized in *Brooks* v. *Tennessee,* 406 U.S. 605. But the opinion in *Brooks* also makes it abundantly clear (p. 609) that "a defendant's choice to take the stand carries with it serious risks of impeachment and cross-examination; it 'may open the door to otherwise inadmissible evidence which is damaging to his case,' *McGautha* v. *California,* 402 U.S. 183, 213 (1971), including, now, the use of some confessions for impeachment purposes that would be excluded from the State's case in chief because of constitutional defects. *Harris* v. *New York,* 401 U.S. 222 (1971)." See also *Lego* v. *Twomey,* 404 U.S. 477.

The recent Superior Court decision in *State* v. *Darwin*, 29 Conn. Sup. 423, decided before *Brooks* v. *Tennessee*, supra, is of similar import. In that case the issue was whether testimony of the sheriff of Tolland County, to whom the defendant Darwin made certain statements while confined in jail, would be admissible at the trial. The court suppressed the use of the statements through the testimony of the sheriff on the state's case in chief. But it specifically ruled (p. 599) as to the use of the statements, saying: "That testimony may be used, if the state so desires, to impeach the credibility of the defendant, if he elects to testify at the trial in his own behalf." The factual situation in *Darwin* is a much weaker one, since the statements were made in the absence of counsel and without a knowing and voluntary waiver by Darwin of his rights to have counsel present.

If the defendant in the instant case does decide to take the stand, he has no right to conceal the truth, as *Harris* v. *New York*, 401 U.S. 222, 224, makes clear.

A number of additional recent decisions would appear to support the conclusions reached herein. See *Couch* v. *United States*, 409 U.S. 322; *Dukes* v. *Warden*, 406 U.S. 250; *McGautha* v. *California*, 402 U.S. 183; *Procunier* v. *Atchley*, 400 U.S. 446; *Walder* v. *United States*, 347 U.S. 62; *United States* v. *Lombardozzi*, 467 F.2d 160; *United States* v. *Kenny*, 462 F.2d 1205; *United States* v. *Harrison*, 461 F.2d 1127; *United States* v. *Springer*, 460 F.2d 1344; *United States* v. *McQueen*, 458 F.2d 1049; *United States* v. *Eskridge*, 456 F.2d 1202; *United States* v. *Blackwood*, 456 F.2d 526; *United States* v. *Bartlett*, 449 F.2d 700; *United States* v. *Milano*, 443 F.2d 1022; *State* v. *Mello*, 79 Wash. 2d 279.

In conclusion, the court orders that the two statements given by the defendant to the state's attorney must be suppressed entirely for use in connection with the state's case in chief. Since no issue as to their involuntariness is raised herein, the statements may, if the defendant elects to testify in his own behalf, be used for impeachment purposes only.

An order may enter accordingly.