Todd SINCOCK, Petitioner–Appellant,

v.

Gary DAVIS, Respondent–Appellee.

No. 01–1082.

United States Court of Appeals, Seventh Circuit.

April 5, 2002.

Before BAUER, COFFEY, and DIANE P. WOOD, Circuit Judges.

## ORDER

Todd Sincock was convicted in a Wisconsin state court of second-degree reckless endangerment of safety, substantial battery while armed, and criminal damage to property. For these offenses, he received a sentence of ten years' imprisonment. After exhausting his state court remedies, he filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, claiming among other things that his waiver of his right to remain silent at trial was not knowing and voluntary. The district court denied his petition, but certified the Fifth Amendment issue for appeal. We agree that Sincock has not met the stringent standards for habeas corpus relief, and we therefore affirm the judgment of the district court.

A domestic controversy gave rise to Sincock's state prosecution. In June 1994, his ex-wife, Susan Krahn, was in her car with her child and with a man named Leonard Schroth. Sincock confronted them while driving in his truck. Before all was said and done, Sincock had broken Krahn's car window and had injured Schroth. This led in turn to the charges mentioned above.

His state court trial began in January 1995. The state rested its case at approximately 2:00 p.m. on the second day of trial. When the court was ready to resume the proceedings, Sincock's attorney, Mr. Barrock, could not locate any of the defense witnesses he had planned to call. At that point, the following exchange took place:

THE COURT: What about Mr. Sincock, is he going to testify?

MR. BARROCK: I –

THE COURT: Maybe we can have him testify, at least we can get his testimony out of the way.

MR. BARROCK: Judge, I cannot have – I can't have him testify, make a decision this afternoon until after [the other defense witnesses testify].

THE COURT: Okay, produce them and bring the jury out.

Gall darnit, sit here, waste a whole afternoon for nothing.

(2:37 p.m.)

MR. BARROCK: [Defense witness] Mr. Brooks isn't here yet, Judge.

THE COURT: Well, then put Mr. Sincock on, put somebody on.

MR. BARROCK: Judge, I can't put Mr. Sincock on.

THE COURT: Well then, are you resting?

MR. BARROCK: Judge, I –

THE COURT: We've been waiting now since ten minutes to two, it's now twenty minutes to three.

MR. BARROCK: And the reason Mr. Brooks would be here but for him being – obviously being informed that he didn't have to show up today.

PROSECUTOR: No.

MR. BARROCK: I know he was subpoenaed and I never released him from my subpoena.

When I talked to him last, he was under the impression that he would be here.

Now, if he got the wrong impression from [the prosecutor] saying he could go home, yeah, I can't say until I talk to him.

I can only do so much, Judge.

THE COURT: I'm not going to sit around here all afternoon just twiddling my thumbs because you didn't get your witnesses here.

Now what do you want to do?

(Off the record discussion between defense counsel and defendant.)

THE COURT: Waste more time.

(Off the record discussion continued between defense counsel and defendant.)

THE COURT: You can do that, I want to finish this case.

After this exchange, Mr. Barrock advised the court that he had spoken with two of his witnesses and that both stated that they were present the previous day when an "officer" told them they could go home unless called to reappear. The prosecutor then stated that she had released the defense witnesses from the state's subpoenas but told them that if the defense needed them they would have to appear. The court then said to Mr. Barrock "well, at least you can put the defendant on." Once again, Mr. Barrock objected, but he then called Sincock after the court told him to "call the witnesses you have." The following day, two of the previously missing defense witnesses testified. During his examination of them, Mr. Barrock never elicited any testimony to substantiate his assertion that the prosecutor had told them that they need not appear.

The jury convicted Sincock, and he appealed to the Wisconsin Court of Appeals. Relying on *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), that court concluded that the trial court acted within the bounds of its discretion to control the progress of a case when it required Mr. Barrock (for Sincock) to put a witness on or to rest. The court rejected Sincock's assertion that the trial court had violated his right to remain silent as recognized in *Brooks v. Tennessee*, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972), in which the Supreme Court struck down a state statute that required a criminal defendant who wanted to testify to do so before any other defense witness.

*Brooks*, the court thought, was distinguishable because it addressed a statutory rule about the order of witnesses and not an individualized decision for a particular case. The Wisconsin Supreme Court then denied Sincock's petition for review.

This habeas corpus petition followed in April 2000. In denying it, the district court concluded that the decision of the Wisconsin appellate court was neither contrary to nor an unreasonable application of governing Supreme Court authority. The court also decided that § 2254(e) precluded an evidentiary hearing on the question whether the prosecutor erroneously told Sincock's witnesses that they did not need to appear, because Sincock failed to develop a factual basis for that claim in the state court.

The district court correctly recognized that a petitioner is not entitled to habeas corpus relief under § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (which applies to this case) unless the state court's adjudication of a matter "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The "contrary to" standard governs only a narrow range of cases in which a state court applies the wrong rule to decide a question of law or confronts facts "materially indistinguishable" from those in a Supreme Court decision but reaches a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The "unreasonable application" standard is met if the state court (1) unreasonably applies the correct legal rule to the facts, (2) unreasonably extends a legal principle from a Supreme Court decision to a new context where it should not apply, or (3) unreasonably refuses to extend a legal principle to a

new context where it should apply. *Williams, id.* at 407, 120 S.Ct. 1495.

As we noted at the outset, these are stringent standards. While the sequence of events Sincock recounts is somewhat troubling—especially the role the prosecutor played in the unavailability of the other defense witnesses, to the extent she may have failed to distinguish clearly between their obligations under the subpoenas issued by the State and their obligations under the subpoenas issued by the defense—it is not our task to review that problem *de novo.* Instead, we must consider whether either possibility for relief recognized in § 2254 appears on this record. We agree with the district court that neither standard is met.

■ The decision of the Wisconsin appellate court with respect to the trial court's insistence on Sincock's testifying before his supporting witnesses is not "contrary to" *Brooks.* To the contrary, the state court was aware of *Brooks* and offered a reasonable distinction between that case and Sincock's. *Brooks* involved a categorical rule governing the order in which a criminal defendant and supporting witnesses were to testify, whereas no such thing was involved in Sincock's case. The trial court was faced with an unexpected problem and decided to solve it by having Sincock testify first. Nothing in *Brooks* implies that there is an unqualified right for criminal defendants to testify *last.* In fact, *Geders* suggests that trial courts enjoy wide discretion over the conduct of trials, including the order in which witnesses should appear. Without offering a final word on the subject, we cannot say that the interpretation the Wisconsin appellate court gave to these two decisions was contrary to either one. Nor are the facts in Sincock's case so similar to those in *Brooks* that the same result must inevitably follow.

■ Nor do we find the decision of the Wisconsin appellate court to be an unreasonable application of either *Brooks* or *Geders.* Our inquiry here is a narrow and deferential one: we ask only if the state court's decision is "at least minimally consistent with the facts and circumstances of the case" or "if it is one of several equally plausible outcomes." *Boss v. Pierce,* 263 F.3d 734, 742 (7th Cir.2001). What Sincock really wants is an extension of *Brooks* to cover his case. He suggests a legal rule in which a trial court's decision that has the same practical effect as the statute in *Brooks* is just as much a violation of the defendant's Fifth Amendment rights as the statute was there. For several reasons, we cannot go this far. First, we do not see this as the only plausible interpretation of *Brooks,* even if it is one. The approach the Wisconsin appellate court took strikes us as equally plausible, which is enough. Second, Sincock failed to make a record on the important circumstances leading up to his forced choice between testifying first and forfeiting his right to present a defense. We do not know what the prosecutor said to the witnesses, even though Sincock had a chance to find out when they later testified. The Fifth and Fourteenth Amendments forbid only state-imposed sanctions that coerce testimony by making assertion of the Fifth Amendment privilege costly. *Griffin v. California,* 380 U.S. 609, 613–14, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). This record does not support a conclusion that the state was ultimately responsible for Sincock's dilemma, and in the present circumstances those gaps in the record cannot be cured through the vehicle of habeas corpus.

We therefore AFFIRM the judgment of the district court.