[No. B178654. Second Dist., Div. Three. Nov. 4, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD WIEGE, JR., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 1 of the Discussion.

## COUNSEL

Charles Brian Holzhauer, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Kenneth N. Sokoler and Susan Lee Frierson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KLEIN, P. J.**—Defendant and appellant, Donald Wiege, Jr., appeals from the judgment entered following his conviction, by jury trial, for receiving stolen property (Pen. Code, § 496d, subd. (a)).[1] Sentenced to state prison for two years, he now appeals, claiming there was trial error.

The judgment is affirmed.

## BACKGROUND

Viewed in accordance with the usual rule of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103]), the evidence established the following.

### 1. *Prosecution evidence.*

On May 4, 2004, Ana Robles drove her 1995 Chevy Tahoe Sport Utility Vehicle (SUV) to her 6:00 a.m. shift at the Robinsons-May distribution center in the City of Industry. She parked in the company parking lot. Around 10:00 a.m., Robles was notified her SUV had been stolen. She checked, and

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

found it was missing from the parking lot. She had not given anyone permission to use it. When she retrieved her vehicle that afternoon, she found the dashboard frame broken and her car's stereo equipment ripped out and thrown into the back.

At about 9:35 a.m. that same morning, police officers went to East 25th Street in Los Angeles. At the rear of this residence, they found Robles's stolen SUV. Defendant Wiege was in the backseat and he appeared to be busy doing something. As one officer described the scene, "The interior of the vehicle was obviously stripped. The stereo equipment was pulled out—was laying on the seats inside the vehicle. It looked like somebody had ransacked the interior of the vehicle."

Wiege asked one of the arresting officers, "You got me with Lo-Jack, huh?" Wiege said he was going to get $2,000 for the car, but "he wanted to keep the rims because they were nice rims." As he was being taken to a patrol car, Wiege said he couldn't get a job because he had been shot in the leg the year before, "and that's why he does this."

 2. *Defense evidence.*

Wiege did not testify.

Denise Calderon testified she and Wiege were living together in May 2004. On the day he was arrested, she had given him a ride to a friend's house at about 9:25 or 9:30 a.m. on her way to work. The friend's house was on 25th Street, just a few blocks from where she and Wiege were living.

## CONTENTIONS

1. The trial court erred by denying Wiege's *Faretta* motion to represent himself. (*Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d. 562, 95 S.Ct. 2525].)

2. The trial court erred by requiring that Wiege either be the first defense witness or not testify at all.

## DISCUSSION

 1. *The trial court did not err by denying the Faretta motion.*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[*]See footnote, *ante,* page 1342.

### 2. *The trial court did not require Wiege to testify first or not at all.*

Wiege contends the trial court violated his Sixth Amendment and fair trial rights by requiring that he either be the very first defense witness or that he not testify at all. This claim is meritless.

### a. *Procedural background.*

Before the start of jury voir dire on Tuesday, September 21, defense counsel told the trial court he had a witness who could only testify on Thursday morning. The trial court said, "We'll wait for Thursday morning, if you have a witness. No problem with that." The People finished presenting their witnesses on Wednesday in the midafternoon. The trial court then expressed its displeasure about losing the rest of the afternoon:

"The Court: I'm not totally happy that we're adjourning now. What was the story why your witness was not able to come today?

"[Defense counsel]: I planned—I thought they were going to talk longer, and she's working. So I said she could come tomorrow morning.

"The Court: Is there any other witnesses you intend to call?

"[Defense counsel]: To be candid, her and, if it doesn't go well, I may have to put my client on.

"The Court: Well, you have to put your client on now. If you're going to call him, you have to put him on now, because I agreed that she could come tomorrow, but there's no reason for him—for me to just stop and do this tomorrow.

"If you want me to take a break, and you want to talk to him, you can talk to him, but I'm not waiting until tomorrow for him. I only agreed that this last witness could testify . . . tomorrow."

After discussing some other issues, the trial court said, "I'll take a brief break. You talk to him. I want to know this afternoon if he's going to testify."

Following this recess, the following colloquy occurred:

"The Court: We're on the record. I indicated to the defense to let me know whether his client is going to take the stand. Is he going to []take the stand?

"[Defense counsel]: Your Honor, for the record, I'm going to object to . . . being forced to decide whether today he has to testify or not. I was going to determine whether the witness tomorrow was sufficient. If the witness tomorrow is not sufficient, then I was considering putting him on tomorrow.

"The Court: I'll consider that, Mr. Lopez, but . . . [¶] . . . [¶] . . . can you explain to me: What is it about that witness that will change whether your client is going to testify or not? What is it he's going to say? I mean, whether he's going to be a good witness?

"[Defense counsel]: Your Honor, it just depends on what comes out in testimony. If the Court is asking me to decide today, my decision is he won't testify.

"The Court: You'll have to convince me tomorrow that there's some need to put him on. It's 3:05. We have another hour and 20 minutes.

"[Prosecutor]: I talked to that witness and . . . it's kind of what counsel said. I mean, what she's going to testify to is she's the girlfriend of the defendant . . . and she dropped him off about 9:20 in the morning, which would be about 15 minutes before the officers responded. And so, therefore, that's sort of counts 1 and 4 that it's an alibi for. I can't imagine what else—

"[Defense counsel]: That should be sufficient. If that is what comes out, Your Honor, probably the odds are I won't call him. I just don't want anything—I don't want to be precluded in case something—cases have gone bad before, Your Honor.

"The Court: I don't know. As I said, I asked you to put him on now. I don't think you get to decide the order of testimony. You made your record. I made my record, and I reserve the right not to allow him to testify tomorrow if I choose not to, because I'm prepared right now to hear him, and you're not calling him now; is that right?

"[Defense counsel]: Correct."

After asking Wiege if he understood he had a right to testify, the trial court said, "Anyway, I'll hold off. If there's not some changed circumstance told to me why he didn't testify today, he isn't testifying, because I'm ready to go right now."

The next morning, Denise Calderon testified she gave Wiege a ride to his friend's house about 9:25 or 9:30 a.m. on the day Robles's SUV was stolen. After Calderon was excused, the following colloquy occurred:

"[The Court:] Does the defense have any additional witnesses?

"[Defense counsel]: No, Your Honor.

"The Court: Does the defense rest?

"[Defense counsel]: Yes, we do."

On the People's motion, the trial court subsequently dismissed the two counts[9] that were contradicted by Calderon's alibi testimony, and Wiege was convicted only on the charge of receiving stolen property.

 b. *Discussion.*

*Brooks v. Tennessee* (1972) 406 U.S. 605 [32 L.Ed.2d 358, 92 S.Ct. 1891] (*Brooks*), struck down a Tennessee statute which required any criminal defendant who wanted to testify to do so before any other defense testimony could be heard by the jury. *Brooks* concluded the statute violated the defendant's Fifth Amendment right against self-incrimination and his due process right to have the full assistance of his attorney in planning his defense. "Although a defendant will usually have some idea of the strength of his evidence, he cannot be absolutely certain that his witnesses will testify as expected or that they will be effective on the stand. They may collapse under skillful and persistent cross-examination, and through no fault of their own they may fail to impress the jury as honest and reliable witnesses." (406 U.S. at p. 609.) "Because of these uncertainties, a defendant may not know at the close of the State's case whether his own testimony will be necessary or even helpful to his cause. Rather than risk the dangers of taking the stand, he might prefer to remain silent at that point, putting off his testimony until its value can be realistically assessed. Yet, under the Tennessee rule, he cannot make that choice 'in the unfettered exercise of his own will.' [The statute] exacts a price for his silence by keeping him off the stand entirely unless he chooses to testify first. This, we think, casts a heavy burden on a defendant's otherwise unconditional right not to take the stand. The rule, in other words, 'cuts down on the privilege [to remain silent] by making its assertion costly.' [Citation.]" (*Brooks*, at pp. 610–611, fns. omitted.)

Wiege argues the trial court's requirement that he testify first or not at all violated *Brooks*. The People argue there was no violation of *Brooks* because, although the trial court initially said Wiege had to testify on Wednesday

---

[9] Count 1 had charged grand theft auto; count 4 had charged burglary of a vehicle.

afternoon or not at all, the trial court effectively revised this ruling after defense counsel objected. The People argue, "In response [to defense counsel's objection], the trial court indicated it would entertain a request to call appellant as a witness the next day . . . . The trial court thus left open a door for appellant's counsel to call appellant as a witness the following day—if there was some need to do so. On the next day, however, after [Calderon] completed her testimony, appellant's counsel did not raise the subject of calling appellant as a witness. Moreover, when the trial court asked whether the defense had any additional witnesses, appellant's counsel said it did not and rested . . . . [¶] By not requesting to testify in spite of the trial court's indication that it would entertain such a request, appellant has forfeited [his *Brooks* claim]."

Wiege disputes this interpretation of the trial court's comments and argues the trial court never changed its ruling that he had to testify before Calderon. We disagree. It appears to us that, although the trial court was unhappy with losing part of an afternoon's court time, the trial court said it would reconsider the matter following Calderon's testimony. The record shows that immediately after defense counsel objected, the trial court retreated, saying: "I'll consider that, Mr. Lopez," "You'll have to convince me tomorrow that there's some need to put him on," and "I reserve the right not to allow him to testify tomorrow if I choose not to." Then, after further argument, the trial court clearly signaled it would entertain a request to have Wiege testify after Calderon, saying: "*Anyway, I'll hold off. If there's not some changed circumstance* told to me why he didn't testify today, *he isn't testifying*, because I'm ready to go right now." (Italics added.) As it turned out, there appears to have been no reason for defense counsel to put Wiege on the stand after hearing Calderon's testimony. If anything, Calderon gave testimony that was even more favorable to Wiege than what he had expected. Hence, there was no reason to put Wiege on the stand after his alibi witness testified.[10]

██ Because the trial court ultimately retreated from its initial directive that Wiege either testify first or not at all, the trial court did not violate the United States Supreme Court's holding in *Brooks* that a defendant's constitutional right against self-incrimination cannot be so burdened.

---

[10] Defense counsel *indicated* he thought it would be "sufficient" if Calderon testified she dropped Wiege off at his friend's house at 9:20 a.m. on the day of the offense. In fact, Calderon testified she drove Wiege to the friend's house at 9:25 or 9:30 a.m. The later she fixed the time of dropping him off, the better for Wiege.

## DISPOSITION

The judgment is affirmed.

Croskey, J., and Kitching, J., concurred.