# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3207

_____

Luther Johnson,

          Petitioner-Appellant,

v.

Dean Minor,

          Respondent-Appellee.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the Western
District of Missouri.

_____

Submitted: January 12, 2010
Filed: February 8, 2010

_____

Before GRUENDER and SHEPHERD, Circuit Judges, and JARVEY,[1] District Judge.

_____

JARVEY, District Judge.

Luther Johnson ("Johnson") appeals from the district court's[2] denial of his 28 U.S.C. § 2254 motion. For the following reasons, we affirm.

--------

[1] The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa, sitting by designation.

[2] The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

# I. FACTS

Petitioner Luther Johnson shot and killed Charles Watkins ("Watkins") on March 30, 1997. Johnson lived with, among others, his wife Carolyn Johnson ("Carolyn") and daughter LaShonda Johnson ("LaShonda"). LaShonda, age 15, had been romantically involved with Watkins; Johnson disapproved of the relationship. On March 30, 1997, Johnson had a cookout at his home with his wife, daughter, and several others. Watkins and his cousin, David Eddie Taylor ("Taylor"), came to Johnson's home during the cookout. The two knocked on the door, entered, and spoke to LaShonda. Johnson told them to leave, but they stayed after Carolyn said they were not causing problems. Watkins and Taylor then went out to the front porch. Johnson told them to leave again. Johnson locked the doors to the house and told everyone that Watkins and Taylor were not permitted inside the house. Johnson went to another room and got a gun. He took the gun to the front door and said to Watkins, "I told you to leave." Johnson shot Watkins, who later died.

Johnson testified that he and Watkins had problems before the shooting, stemming from the romantic relationship between Watkins and LaShonda. According to Johnson's testimony, he thought he had seen Watkins drive by Johnson's house on an earlier occasion holding his hand in the shape of a gun and mimicking the sound of gunshots. At another time, Johnson told Watkins he did not want Watkins seeing LaShonda. Following this encounter, Watkins and his friends followed Johnson, swearing, taunting, and threatening him. Johnson testified that Watkins said he should "smoke" Johnson. Several days later, Watkins asked Carolyn if she wanted Johnson out of the house and displayed what appeared to be a gun in his waistband; Carolyn told Johnson about this and warned him to be careful.

Johnson also testified that on the night of the shooting, he thought he saw Taylor conceal something in his pants while Taylor and Watkins were on the porch. According to Johnson's testimony, after Johnson locked the doors with Taylor and

Watkins outside, he heard someone at the front door trying to get in. He got his shotgun, returned to the front door and yelled "Who is it?" and received no response. Johnson opened the door, and saw Watkins standing there with Taylor behind him. Upon seeing the gun, Watkins said, "If you pull that gun on me I should f--- you up." The two struggled over the screen door. Johnson then heard what sounded like a round being chambered, and he fired the shotgun.

## II. PROCEDURAL BACKGROUND

A jury convicted Johnson of murder in the second degree and armed criminal action. On direct appeal, the Missouri Court of Appeals reversed because the trial court had failed to *sua sponte* instruct the jury on the issue of defense of premises.

The case proceeded to a bench trial on remand. During opening statements, defense counsel said:

> You will hear from the defendant, you will hear from his wife . . .
> We will show from our evidence that he was at his home and he didn't pursue the other man, he didn't chase him, this man made numerous threats. That will be our evidence. And the shooting occurred when the two men, at least one of them tried to break in. We will ask the court for a verdict of not guilty.

As Johnson was about to call his wife Carolyn as a witness at the beginning of his case-in-chief, the following exchange occurred:

> Prosecutor: At this time, Judge, we object to him calling any witnesses to talk about instances regarding self-defense or fear of the defendant until the issue of self-defense has been put in issue in front of this court, and I believe the only way he can do that is to call his client first, and if he wants then to call witnesses to support his client's feelings, all right, but

-3-

right now I believe the law prevents him from calling witnesses to put it in issue right now.

Court: He can call people, but he can't call self-defense until it is injected by his client.

Defense: If I may say, Judge, I propose to put on the wife who will testify simply that on several weeks before – and I want to clear it up now – several weeks before she got off work – well, first she was at home with her husband and the victim came to the door and demanded entry, wanted to see Shay [LaShonda] and the defendant simply told him to leave. I think that's perfectly proper.

Prosecutor: And that's all she's going to testify to?

Defense: I'm sorry, one more thing. She'll testify also that later, a couple of weeks later, she got off the bus at work and at that time Watkins met her, and when he met her he confronted her and asked her if she wanted him to get rid of her husband and he opened his coat and showed her what she believed to be a weapon. She saw something that appeared to be a weapon and she left and went home and told her husband. I think I'm entitled to do that out of order.

Prosecutor: Your Honor, I anticipate based on the first trial that defendant will be testifying that – examining this witness in support of his feelings of acting in self-defense.

Defense: It will.

Prosecutor: Well, there would be no reason to offer Carolyn to say those things if it wasn't that.

Court: Well, yeah.

Prosecutor: The whole purpose of putting Carolyn on is to offer two instances in which the defendant believes that contributed to his reason for acting in self defense, and I think it's improper to do it in the order he's proposing to do it.

Defense: I respectfully disagree. She can tell what happened as long as she doesn't say he acted in self-defense.

Court: Why else would she testify, if it isn't in support of self-defense?

Defense:    If that's the court's ruling, I made my record. All right. Give me a couple of minutes. I'll have to rearrange my people.

Johnson then immediately testified. He testified about the hostile interactions with Watkins, and said he was scared. He testified that he thought he saw a weapon in Taylor's pants the night of the shooting, and that immediately before he shot Watkins he thought he heard the sound of a bullet being chambered. Carolyn then testified about incidents when Watkins had frightened both her and Johnson. Johnson's brother and daughter also testified that Johnson was afraid of Watkins.

The court found Johnson guilty of second degree murder and armed criminal action. On direct appeal, the Missouri Court of Appeals affirmed the convictions without comment. Johnson sought post-conviction review in state court, arguing, *inter alia*, that the trial court essentially forced him to testify by suggesting that he could only raise the issue of self-defense by testifying. Johnson argued his Fifth Amendment rights were thereby violated. The Missouri Circuit Court denied his motion for post-conviction relief on all grounds.

The Missouri Court of Appeals affirmed the circuit court's denial with respect to each of Johnson's claims, stating that a trial court has broad discretion to admit or exclude evidence. The Missouri Court of Appeals found that Johnson had failed to raise the Fifth Amendment claim at trial, and reviewed it for plain error – i.e., error that so substantially affected his rights that a manifest injustice would result if not corrected.

The court noted that Johnson's offer of proof established that his wife would testify to two specific violent threats made by Watkins, which was relevant only to the issue of self-defense. The court also noted that evidence of prior threats made by the victim is admissible as long as the defendant has laid the proper foundation. The court explained that under Missouri law the defendant has the burden of injecting the issue

of self-defense, but is not required to inject it through his own testimony. Rather, he can inject it through any evidentiary source. The appeals court noted that the trial court's ruling and the State's objection did not accurately state the law as a general proposition, insofar as they appeared to suggest that Johnson could only inject the issue of self-defense through his own testimony.

However, the court noted:

> In this case, the effect of the trial court rulings was merely to exercise its broad discretion to control the order of proof at trial. The court did not *force* Johnson to testify. The court properly ruled that the issue of self-defense must be raised before presenting evidence of specific threats or acts of violence. Defense counsel could have made an offer of proof showing that other witnesses would lay a proper foundation for self-defense related testimony. In other words, the defense could have shown that the self-defense issue would be injected through some evidentiary source other than Johnson's own testimony. However, he chose not to.

State v. Johnson, No. 61922, slip op. at 3-6 (Mo. Ct. App. 2008) (emphasis in original) (citation omitted). The appeals court found that the trial court's ruling did not prejudice Johnson in the particular circumstances in the case, where it was apparent that Johnson planned to testify and where defense counsel did not make an offer of proof of any other evidence that would have made Johnson's wife's testimony admissible.

Johnson sought federal habeas relief under 28 U.S.C. § 2254. The district court found that the trial court's evidentiary ruling did not force Johnson to testify, and that the Missouri Court of Appeals' resolution of the claim was not based upon an unreasonable determination of the facts or on a misapplication of federal constitutional law. Johnson's petition for relief was denied.

Johnson appeals.

-6-

## III. DISCUSSION

In reviewing a district court's denial of habeas relief, we review its findings of fact for clear error and its conclusions of law de novo. Flowers v. Norris, 585 F.3d 413, 416 (8th Cir. 2009). We review the underlying decision of the state court pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Flowers, 585 F.3d at 416. Under AEDPA, we may grant a writ of habeas corpus only where the relevant state court decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under Missouri law, a criminal defendant has the burden of injecting the issue of self-defense. Mo. Rev. Stat. § 563.031(4) (2004). A defendant "can meet his 'burden of injecting the issue' of self-defense under the statute if evidence thereof is introduced from whatever source." State v. Fincher, 655 S.W.2d 54, 58 (Mo. Ct. App. 1983) (quoting Mo. Rev. Stat. § 556.051 (1983)). To introduce evidence of the victim's prior specific acts of violence, "[t]he defendant must lay a proper foundation before the evidence can be admitted. Other competent evidence must have raised the question of self-defense." State v. Waller, 816 S.W.2d 212, 216 (Mo. 1991). Here, if Johnson wanted his wife to testify to specific threats by Watkins, under Missouri law he had to inject the issue of self-defense through some evidentiary source. The proffer regarding her testimony did not include evidence regarding Johnson's state of mind.

Johnson argues that the trial court's ruling prohibiting self-defense witnesses until the issue of self-defense was "injected by his client" left the impression that the sole means of injecting the issue of self-defense was Johnson's testimony, and that witnesses could not testify to self-defense unless Johnson testified as the first witness.

Johnson argues that the trial court thus violated Johnson's rights under the Fifth Amendment and the Due Process Clause under the Supreme Court's holding in Brooks v. Tennessee, 406 U.S. 605 (1972).

In Brooks, the Court held that a Tennessee statute that required a criminal defendant who wished to testify to do so before any other defense witnesses violated the defendant's privilege against self-incrimination and constituted a denial of due process. Id. The Court found that the statute "exacts a price for [defendant's] silence by keeping him off the stand entirely unless he chooses to testify first," which "casts a heavy burden on a defendant's otherwise unconditional right not to take the stand." Id. at 610-11. "Pressuring the defendant to take the stand, by foreclosing later testimony if he refuses, is not a constitutionally permissible means of ensuring honesty." Id. at 611. Based on these considerations, the Court found the statute violated the Fifth Amendment. Id. In addition, because the statute "restricts the defense – particularly counsel – in the planning of its case," and deprives the defendant of "the guiding hand of counsel in the timing of this critical element of his defense," the Court found the statute also violated the defendant's Fourteenth Amendment right to due process. Id. at 612-13.

Johnson argues that the court's ruling had precisely the same effect as the Tennessee statute at issue in Brooks, insofar as it forced Johnson to testify first. But the ruling did not force Johnson to testify first. He was not, as in Brooks, kept off the stand entirely if he did not testify first. Id. at 610. Rather, Johnson was only required to testify before his wife Carolyn if he wanted to lay a proper foundation for her testimony. Based on Johnson's opening statement, the trial court reasonably believed that Johnson intended to lay this foundation through his own testimony, and Johnson's lawyer gave the court no reason to believe otherwise. If another witness could have laid a proper foundation for Carolyn's testimony, it was incumbent upon Johnson's lawyer to so appraise the trial court. "The trial judge did not require the defendant[] to take the stand; he merely regulated the admission of evidence, and his commentary

as to what evidence might constitute a foundation did not infringe on [Petitioner's] right to decide whether to testify." <u>Menendez v. Terhune</u>, 422 F.3d 1012, 1032 (9th Cir. 2005).

Nothing in <u>Brooks</u> "curtail[ed] in any way the ordinary power of a trial judge to set the order of proof." <u>Brooks</u>, 406 U.S. at 613. While the trial court's ruling here affected when Johnson testified, "<u>Brooks</u> does not constitute a general prohibition against a trial judge's regulation of the order of trial in a way that may affect the timing of a defendant's testimony." <u>Harris v. Barkley</u>, 202 F.3d 169, 173 (2d Cir. 2000). Where the trial court reasonably believed that the defendant planned to testify and that his testimony was necessary to lay the foundation for another witness's testimony, a ruling that the defendant must testify before the other witness does not constitute <u>Brooks</u> error.

The Missouri Court of Appeals decision finding that the trial court did not force Johnson to testify did not involve an unreasonable application of federal law, and was not based on an unreasonable determination of facts.

Accordingly, we affirm.

_____