**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FEB 26 2004**

**TENTH CIRCUIT**

JENNIFER REALI,

      Petitioner-Appellant,

v.

JAMES ABBOT, Warden, Colorado
Women's Correctional Facility;
ATTORNEY GENERAL OF THE
STATE OF COLORADO,

      Respondents-Appellees.

No. 03-1100
(D. Colo.)
(D.Ct. No. 99-MK-253)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **MURPHY**, Circuit Judge, and **BRORBY**, Senior Circuit Judge.

Appellant Jennifer Reali appeals from the order and judgment of the district court denying with prejudice her petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. She alleges the government deprived her of effective assistance of counsel and due process based on a breach of her attorney-client privilege, and

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

used immunized testimony against her in violation of the Fifth Amendment. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

**Background**

In 1990, Ms. Reali conspired with Brian Hood to murder his wife, Diane Hood. As the pair had planned, Ms. Reali, adorned in men's clothing and a ski mask, shot and killed Mrs. Hood. *People v. Reali*, 895 P.2d 161, 164 (Colo. App. 1994). Within days of the shooting, Ms. Reali confessed to the murder. She told the police she had been involved in a sexual relationship with Brian Hood. She indicated Mr. Hood convinced her to aid him in killing his wife, and provided in detail their murder plans and the events leading up to the shooting. Consequently, she was charged with first degree murder, conspiracy, and a crime of violence. Ms. Reali entered a plea of not guilty by reason of impaired mental condition.[1]

Thereafter, Ms. Reali agreed to cooperate in Mr. Hood's prosecution, on the assurance the district attorney would not seek the death penalty against her. Pursuant to the agreement, Ms. Reali testified under a grant of use immunity at

---

[1] After initially pleading not guilty by reason of impaired mental condition, Ms. Reali amended her plea to not guilty by reason of insanity. However, after a sanity trial jury found her sane, Ms. Reali returned her plea to not guilty by reason of impaired mental condition.

Mr. Hood's grand jury proceedings, bond hearing, and trial.[2] Ms. Reali's legal counsel also provided the prosecution with select defense information to aid in Mr. Hood's prosecution. *Reali*, 895 P.2d at 164.

Prior to his trial, Mr. Hood's attorney attempted to obtain selected materials from Ms. Reali's defense file to use in cross-examining her at Mr. Hood's trial. Claiming attorney-client privilege, Ms. Reali's attorney filed a motion to quash the subpoena. After an *in camera* review of the files, the trial judge presiding over Mr. Hood's case determined Ms. Reali waived privilege and ordered Ms. Reali's counsel to turn over certain materials. As a result, the attorney prosecuting Mr. Hood also gained access to these files. *Reali*, 895 P.2d at 164. These same attorneys later prosecuted Ms. Reali. *Id.*

Prior to her trial, Ms. Reali filed two separate motions to dismiss the charges against her. In the first motion, Ms. Reali claimed the release of material for Mr. Hood's trial violated her Fifth, Sixth, and Fourteenth Amendment rights. In the second motion, she claimed the district attorney's office used immunized

---

[2] A jury subsequently found Mr. Hood guilty of conspiracy to commit first degree murder and two counts of solicitation to commit murder. *People v. Hood*, 878 P.2d 89, 91 (Colo. App. 1994).

testimony in her sanity trial, and would do the same in her pending trial on the merits, in violation of her Fifth Amendment rights.

In considering the first motion, the state trial court ruled the turnover order in Mr. Hood's case was improper. However, the court determined this error did not warrant dismissal of the charges against Ms. Reali. Instead, the court ordered the prosecutors to refrain from using any erroneously obtained evidence.

In addressing the second motion, the court noted Ms. Reali's confession statements were materially the same as her immunized testimony. However, the court prohibited the prosecution from using any immunized testimony and announced it would consider the admission of any questionable evidence outside the presence of the jury. At trial, Ms. Reali did not object to any evidence the prosecution presented on immunity grounds. *Reali*, 950 P.2d at 648.

The jury found Ms. Reali guilty of first degree murder and conspiracy to commit first degree murder. The Colorado Court of Appeals affirmed her conviction, *People v. Reali*, 895 P.2d 161 (Colo. App. 1994), and the Colorado Supreme Court subsequently denied her writ of certiorari. *Id.* Ms. Reali later filed a collateral attack, which the Colorado courts also denied. *Reali*, 950 P.2d

at 649.

Having exhausted her state court remedies, Ms. Reali then filed an application for habeas relief in federal district court. A magistrate judge reviewed her petition and recommended the court deny relief. The United States District Court for the District of Colorado adopted the magistrate judge's recommendation and dismissed the application with prejudice. The district court granted Ms. Reali a certificate of appealability. Ms. Reali now appeals the district court's dismissal of her habeas application.

On appeal, Ms. Reali makes the same three arguments she presented to the district court. She first contends the state court order releasing attorney-client privileged information violated her Sixth Amendment right to effective assistance of counsel. Additionally, she contends this release of information violated her right to due process of law under the Fifth and Fourteenth Amendments. Finally, Ms. Reali claims the state violated her Fifth Amendment privilege against self-incrimination when the same attorneys who prosecuted Mr. Hood prosecuted her, used her immunized testimony to prepare for trial, and used the immunized testimony at trial.

**Standard of Review**

We review the district court's legal determinations in denying a § 2254 petition de novo. *Garcia v. Shanks*, 351 F.3d 468, 471 (10th Cir. 2003). Under the Antiterrorism and Effective Death Penalty Act of 1996, if a state court adjudicates a claim on its merits, a petitioner is entitled to federal habeas relief only if she can establish the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). The Act also requires federal courts to presume state court factual findings are correct, and places the burden on the petitioner to rebut the presumption with clear and convincing evidence. Section 2254(e)(1).

**1. Attorney-Client Privilege Sixth Amendment Claim**

Ms. Reali first argues the state trial judge's order requiring her attorney to turn over defense files to her eventual prosecutors ("turnover order") rendered her counsel ineffective. Under such circumstances, she argues the court should presume she suffered prejudice. In addition to her presumption argument, Ms. Reali claims she suffered actual prejudice because these materials provided the

prosecution with an unfair advantage in attacking her impaired mental condition defense. From these materials, she asserts the prosecution learned (1) she "swaggered" when she walked to disguise herself as a man when approaching Mrs. Hood; (2) she provided her attorney with specific details of the crime she earlier had claimed she did not remember; and (3) she had written letters to her attorney which suggested she was alert and functioning intelligently. Additionally, Ms. Reali asserts the turnover "chilled" her right to testify on her own behalf. Ms. Reali's arguments are unpersuasive.

The Sixth Amendment guarantees an accused the right to assistance of counsel for his or her defense. *United States v. Morrison*, 449 U.S. 361, 364 (1981). This right stems from the understanding fairness of the adversary proceeding is the benchmark of the Sixth Amendment. *Nix v. Whiteside*, 475 U.S. 157, 175 (1986). To prevail on a Sixth Amendment violation claim, the complaining party generally must demonstrate prejudice. *Shillinger v. Haworth*, 70 F.3d 1132, 1139-41 (10th Cir. 1995). However, in certain Sixth Amendment contexts, courts will presume a party suffered prejudice. *Id.* at 1141.[3] In the

---

[3] In *Shillinger*, this court detailed a number of situations where courts have presumed prejudice. Examples of such circumstances include:

> prohibiting direct examination of the defendant by his counsel, *see Ferguson v. Georgia*, 365 U.S. 570 (1961); requiring those defendants who

attorney-client privilege context, we presume prejudice only "when the state becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so." *Id.* at 1142. Ms. Reali fails to demonstrate she is entitled to a presumption of prejudice, or that any prejudice actually resulted.

In considering Ms. Reali's Sixth Amendment claim, the Colorado Court of Appeals determined she failed to demonstrate any specific prejudice resulted from the turnover order. *Reali*, 895 P.2d at 169-70. Assuming the turnover order was in error, the court ruled the trial court properly remedied the error by prohibiting the prosecution from using information it did not have prior to the turnover order. *Id.* at 169. It concluded, absent some showing of specific prejudice or a violation of the trial court's remedial order, Ms. Reali was not entitled to relief.[4] *Id.* at

---

choose to testify to do so before any other defense witnesses, *see Brooks v. Tennessee*, 406 U.S. 605 (1972); refusing to allow defense counsel closing argument in a bench trial, *see Herring v. New York*, 422 U.S. 853 (1975); and prohibiting any consultation between a defendant and his attorney during an overnight recess separating the direct-examination and the cross-examination of the defendant, *see Geders v. United States*, 425 U.S. 80 (1976).

*Id.*, 70 F.3d at 1141.

[4] When addressing another portion of Ms. Reali's direct appeal, the Colorado Court of Appeals specifically rejected examples Ms. Reali offered to demonstrate the prosecution violated the trial court's remedial order. *See infra* Part 3.

170.

This state appellate court decision is not contrary to, or an unreasonable application of, federal law. Because Ms. Reali fails to show the prosecution purposefully intruded upon her attorney-client relationship, she is not entitled to a presumption of prejudice. *See Shillinger*, 70 F.3d at 1412. Nor has Ms. Reali demonstrated she suffered any specific prejudice. She does not support her four examples of prejudice with citations to record evidence demonstrating the purported prejudice actually occurred. Accordingly, Ms. Reali is not entitled to habeas relief on her Sixth Amendment claim.

## 2. General Due Process Violation Claim

Next, Ms. Reali claims the judge presiding over Mr. Hood's trial deprived her of due process under the Fifth and Fourteenth Amendments by ordering her counsel to turn over material in her defense file. In this portion of her brief, Ms. Reali does not articulate a specific due process violation, or cite case law in support of her claim. She simply argues the prosecution's possession of the materials "is inherently detrimental, unfairly advantages the prosecution, and threatens to subvert the adversary system of justice." We construe her argument

as a general fundamental unfairness claim.[5]

A constitutional due process violation arises when a criminal trial lacks fundamental fairness to the degree it is "shocking to the universal sense of justice." *United States v. Russell*, 411 U.S. 423, 432 (1973) (quotation marks and citation omitted). *See also Lisenba v. California*, 314 U.S. 219, 236 (1941) ("As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice."). After carefully reviewing the record on appeal and relevant constitutional due process requirements, we conclude the prosecution's possession of information from Ms. Reali's defense file did not render her trial fundamentally unfair. Although the fact the prosecution possessed this information is troubling, we cannot say it warrants habeas relief in light of the trial court's order prohibiting the prosecution from using this information. We therefore affirm the district court's order denying habeas relief on this claim.

---

[5] Although it is unclear whether Ms. Reali raised this precise claim before the Colorado Court of Appeals, we exercise our prerogative under 28 U.S.C. § 2254(b)(2) to deny her claim on the merits notwithstanding her failure to exhaust available state court remedies.

**3. Fifth Amendment Improper Use of Immunized Testimony Claim**

Ms. Reali lastly asserts the state violated her Fifth Amendment privilege against self-incrimination when the attorneys who elicited her immunized testimony against Mr. Hood later prosecuted her case. Ms. Reali contends the prosecution's mere exposure to the immunized testimony is unlawful and warrants overturning her convictions. She further alleges the prosecutors used the videotapes and transcripts of her immunized testimony to prepare their case against her, thereby gaining an unfair advantage. Specifically, Ms. Reali contends the prosecution gained information allowing them to (1) remark during closing arguments on how Ms. Reali altered the ski mask worn during the shooting as evidence of her deliberation and intent; (2) obtain a witness to testify against her at trial; (3) counter the importance of her having poor vision and being left-handed whereas the shooter used her right hand to wield the murder weapon; and (4) use a witness in the sanity trial who observed her immunized testimony at Mr. Hood's bond hearing and whose subsequent testimony was therefore tainted.

Under the Fifth Amendment, no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V, Cl. 3. However, the government may compel citizens to testify so long as it does not use the testimony to inflict criminal penalties upon the witness. *Kastigar v. United States*, 406 U.S.

-11-

441, 445-47 (1972). To ensure the government does not use such immunized testimony, once a defendant establishes the government compelled her to testify about a matter relevant to her own prosecution, the government then has the burden of demonstrating "all of the evidence it proposes to use was derived from legitimate independent sources." *United States v. Lacey*, 86 F.3d 956, 972 (10th Cir. 1996) (quotation marks and citations omitted).

As previously discussed, the trial court denied Ms. Reali's pretrial motion to dismiss for improper use of immunized testimony. The trial court determined the immunized testimony was substantially the same as the information contained in Ms. Reali's confession to the police, which was not immunized. The court concluded the prosecution satisfied its burden of proving the evidence it proposed to use arose from an independent, lawful source.

On direct appeal, the Colorado Court of Appeals rejected Ms. Reali's claim the prosecutor's mere exposure to her immunized testimony mandated the reversal of her conviction. *Reali*, 895 P.2d at 167. Because Ms. Reali did not raise any use immunity objections at trial, the court conducted a harmless error analysis as to whether the prosecution used any immunized testimony during the trial. *Id.* The court noted the prosecution independently and lawfully possessed: Ms.

Reali's detailed, non-immunized confession describing her part in the killing; additional non-immunized information Ms. Reali's counsel provided; and materials relating to her impaired mental condition defense – turned over as required by statute. *Id.* With respect to three of the four instances Ms. Reali claims the prosecution used immunized testimony, the court found the prosecution obtained its information from lawful independent sources. *Id.* at 168-69. As to Ms. Reali's fourth claim regarding tainted witness testimony, the court found:

> The record establishes that none of [Ms. Reali's immunized] testimony influenced this witness.... [T]he only feature that the witness relied upon in identifying [Ms. Reali] as the purchaser of the mask was her physical appearance and, possibly, the sound of her voice....
>
> [T]he privilege against self-incrimination does not extend to non-testimonial actions.

*Id.* at 168. Thus, the court held no prejudicial error occurred.

Under our limited standard of review, we conclude the state court's determination on the issue of whether the prosecution utilized immunized testimony is not contrary to, or an unreasonable application of, clearly established federal law. The Colorado Court of Appeals decision reasonably applies federal law pertaining to use immunity as announced in *Kastigar*. Additionally, the state court's decision is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. We affirm the

-13-

district court's decision Ms. Reali's claim of improper use of immunized testimony does not warrant habeas review.

For the foregoing reasons, we **AFFIRM** the district court's denial with prejudice Ms. Reali's petition seeking a writ of habeas corpus.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge